By the Court,

Nelson, Ch. J.
I am unable to perceive any reason for the objection which was taken to the judge’s decision in admitting evidence to impeach the character of the subscribing witness to the instrument in question. It is clear upon principle as well as authority, that in a case like the present such evidence is admissible. (Wright v. Littler, 3 Burr. 1244, 1255; 1 Bl. Rep. 345, S. C.: Doe v. Stephenson, 3 Esp. Rep. 284; Doe v. Walker, 4 id. 50; 2 Stark. Ev. 922, 6th Am. ed.; 1 Phil. Ev. 308, 4th *612 Am. ed.; Cowen if Hill’s Notes to Phil. Ev. 764, 771; Doe v. Ridgway, 4 Barn, if Aid. 55; Provis v. Reed, 5 Bingh. 435.) Proof of the signature of a deceased subscribing witness, is presumptive evidence of the truth of every thing appearing upon the face of the instrument relating to its execution ; as it is presumed the witness would not have subscribed his name in attestation of that which did not take place. But this presumption may be rebutted; and hence the propriety, and even necessity, of permitting him to be impeached in the usual mode, as if he were living and had testified at the trial to what his signature. imports. The reason for admitting such evidence in a case like the present, was stated by Bayley, J. in Doe v. Ridgway (4 Barn, if Ald. 55,) thus: “He (the attesting witness to a bond) must have been called, if he had been alive, and it would then have been competent to prove, by cross-examination, his declarations as to the forgery of the bond. Now, the party ought not, by the death of the witness, to be deprived of obtaining the advantage of such evidence.” These observations are equally pertinent in favor of receiving evidence of general character, by way of impeachment. A similar doctrine will be found in Provis v. Reed, (5 Bing. 490.) And see 2 Stark. Ev. 263, note (c), 6th Am. ed.(a)
*613 It was said on the argument, that where a living witness is examined on the stand, the impeaching testimony must be confined to his character at the time of the examination, and not at the date of the instrument. Such is unquestionably the rule, and for the most obvious reasons. The confidence to be placed in the testimony of a witness depends upon his character at the time of testifying, and not upon what it may have been some years before. The enquiry should be, therefore, what his character now is ; for though it may have formerly been bad, if renovated and unimpeachable when the witness is called upon the stand, his testimony, like that of others, is entitled to belief. But where the execution of an instrument stands alone upon *614 the presumption derivable from proof of a subscribing witness’ signature, then, from the necessity of the case, the degree of confidence to be placed in such evidence must depend upon what his character was when he made the attestation ; for the latter then comes in by way of substitute for his oath. (Crouse v. Miller, 10 Serg. & Rawle, 155, 158, per Gibson, J)
The only doubt I have had in regard to this case is, whether some of the collateral facts offered for the purpose of strengthening the evidence of due execution derived from proof of the signature of the attesting witness, should not, under the circumstances, have been received. It was proposed to prove, that the will of Nancy Losee, *615 under which the defendant was acting as executor, was made but a few months before the instrument in question ; that she was competent to transact business at the time, and had, on several occasions, expressed an intention of giving the plaintiff something handsome for taking care of her.
As her competency to make the instrumjent sued upon was not questioned at the trial, so much of the offer as related to this point was properly excluded. But proof of her disposition and intention to reward the plaintiff, might have tended slightly to favor the idea of genuineness. The circumstance, however, is extremely remote, and even when offered in aid of other circumstantial evidence of execution credible in itself, must be deemed to lie on the very confines of that species of proof. In this case it was not thus offered, but was proposed by way of corroborating the attestation of a thoroughly impeached witness; and hence, if admitted, it could not legally have changed the result. I do not understand the learned judge as having excluded it on the ground that collateral circumstances, such as a recognition of the instrument by the supposed maker, her procuring it from the draftsman, &c. could not be resorted to; but because the circumstance offered was too remote, under the particular aspect of the case, to be entitled to any effect. He therefore rejected it, not as absolutely incompetent, but as immaterial. I am of opinion that no error was committed at the circuit, and that a new trial should be denied.
New trial denied.

 The rule as recognized by Bayley, J. in the case cited by the Chief Justice was deliberately held by the South Carolina court of appeals in McElwee v. Sutton, (2 Bail. Rep. 128.) There, a deed was introduced on proof of the death and handwriting of one Vail, the attesting witness; whereupon- the opposite party offered to show that Vail had frequently said, the deed had been ante-dated' to protect the property from creditors. The evidence was rejected ; and for this cause, among others, a new trial was afterwards ordered. O’Neall, J. who delivered the final opinion of the court, after remarking that the presumptions arising from the attestation in question might be overcome, added: “ To do this, nothing can be more satisfactory than to show that the witness himself had said, ‘ although I have witnessed the deed, yet I know it does not bear its genuine date ; but was ante-dated to save the property.’ This is in effect a contradiction of the testimony which the law presumes him to give.” The supreme court of Pennsylvania, acting on a like principle, allowed the entries of an absent clerk to be impeached by evidence of his bad character for honesty. (Crouse v. Miller, 10 Serg *613 & Rawley 155.) It has been held also, that the general character of attesting witnesses by whom a deed of land has been summarily proved for the purposes of registry, may be impeached ; the court saying, that were the rule otherwise “ a felon, convict or an insane man, might go before the prothonotary and prove a deed, which though forged, might not be invalidated unless you could attack the witness’ character. (Van Dyke v. Thompson, 1 Harringt. R. 109 ; Gardenhire v. Parks, 2 Yerg. 23.)
The American cases, especially McElwee v. Sutton, and Crouse v. Miller, supray will be found to speak a strong and decided language in favor of the doctrine of the principal case, vthether the mode of impeachment adopted be by proving contradictory statements of the attesting witness, or giving evidence of his general character. They are in harmony too with the English cases cited by the Chief Justice. A recent adjudication in the exchequer, however, denies that contradictory statements of the witness can be resorted to. It goes upon the ground, among others, that the attestation is not in the nature of a declaration by the witness, but is used merely to show the fact that he put his name there in the manner in which attestations are usually placed to genuine signatures. Another ground is, that the rights of parties under solemn instruments might be affected at remote periods, if such evidence were admissible. (Stobart v. Dryden, 1 Mees. & Welsh. 615.) This case appears to have met the approval of Messrs. Phillipps and Amos, (1 Phil. Ev. 221, 8th Land, ed.,) and of Mr. Greenleaf. (Greenl. on Ev, 150.)
With deference, however, it is submitted, that the rule thus far followed by the American cases, and which has been sanctioned by a succession of the ablest judges of England, is preferable as being, to say the least, equally consistent with the analogies of the law, and better calculated to secure the ends of justice. By this rule, the act of attesting an instrument is regarded as a written declaration of the subscribing witness to which the law, in the event of his death or absence, yields a rcluctuit ciudii by way of necessary substitute for his oath. It affirms, moreover, *614 that the weight due to this declaration must, from the yexj nature of things, depend even more immediately upon the character and consistency of the declarant than if he had made it in court, under the full responsibilities of a witness, and where he' might be subjected to the ordeal of a cross-examination. Hence the right of showing counter declarations, or bad character; for otherwise, the attesting clause would come with the same force as the written assertion of an honest man, though the subscriber were a notorious forger ; nay, though he had repeatedly sworn that ¿he instrument was not executed in his presence, and that he knew-it tobe a counterfeit. Numerous cases may be supposed where, under the doctrine of Stobart v. Dryden, counterfeit deeds, and other writings affecting the most important rights, might be established without the possibility of detection: nor can it be proved that these dangers' are either more remote or imaginary than those which the exchequer apprehended from the opposite rule.
The general pertinency of evidence to show the bad character of a subscribing witness, where his attestation is used in proving an instrument, may be illustrated by referring to that class of cases in which character has been resorted to by way of increasing or diminishing the probabilities of a fraud or wrong charged upon a deceased person. Thus, where the subscribing witness to a deed or will “ impeaches it on the ground of fraud, and accuses another subscribing witness, who is dead, of having been an accomplice, the party claiming under it may give evidence of the general good character of the deceased witness." (Per Gibson, J. in Crouse v. Miller, 10 Serg. & Rawle, 158; and see Stephenson v. Walker, 4 Esp. Rep. 50 ; S. C. 3 id. 284; Provis v. Reed, 5 Bing. 435 ; S. C. 3 Moore & Payne, 4; Bishop of Durham v. Beaumont, 1 Campb. R. 207.) In North Carolina, where trespass was brought for killing a slave; held, that the slave’s good character was admissible to repel the presumption of his improper conduct. (Pierce v. Myrick, 1 Dev. Rep. 345.) See Dietrick v. Dietrick, (5 Serg. Rawle, 207;) and Nussear v. Arnold, (13 id. 323.)